IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2012

**STEPHEN LEE SCOTT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-811     Monte Watkins, Judge**

_____

**No. M2011-00539-CCA-R3-PC - Filed June 28, 2012**

_____

The Petitioner-Appellant, Stephen Lee Scott, appeals the denial of post-conviction relief, contending that he received the ineffective assistance of counsel in connection with his guilty plea because counsel misinformed him regarding the elements of felony murder.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Tillman W. Payne, Nashville, Tennessee, for the Petitioner-Appellant, Stephen Lee Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The petitioner was indicted in this case for first degree felony murder, premised on the underlying felony of attempted murder, and reckless endangerment.  On April 27, 2007, the petitioner entered a guilty plea in the Davidson County Criminal Court to second degree murder, a Class A felony, and the charge of reckless endangerment was dismissed.  Pursuant to the plea agreement, the trial court sentenced the petitioner to twenty-five years as a Range I, violent offender.  The petitioner timely filed a pro se petition for post-conviction relief. The petitioner was appointed counsel, and he filed an amended petition.  Following an evidentiary hearing, the post-conviction court entered a written order denying relief. Although the petitioner did not timely file notice of appeal, this court granted his motion to waive the thirty-day time requirement for filing such notice under Tennessee Rule of Appellate Procedure 4(a).

## FACTUAL BACKGROUND

**Plea Submission Hearing.** The State summarized the facts supporting the petitioner's guilty plea at the April 27, 2007 plea submission hearing:

Had this case proceeded to trial the State's witnesses are available and they would have testified on Monday, that on November the 12th, 2005[,] Denise Brown was with friends at 600 South Seventh Street. They were in a friend's bedroom on the second floor. They were braiding their hair and they were getting ready to go see a movie. Denis[e] Brown was a fifteen-year[-]old straight A student at Stratford High School.

The witnesses would have testified that through the defendant's own statement that Stephen Scott was throwing dice a few feet away and, according to this statement, was robbed by a man named Juan. At the time the defendant grabbed a gun. Two witnesses would have testified that he had on a bullet-proof vest, that he got two guns, actually, and began firing at what he believed was Juan . . . . As he continued firing, at least four shots, one of them went through the upstairs window and went into the brain of Denise Brown.

Your Honor, based upon all these facts, and the facts [sic] that the defendant himself admitted that he is the one that killed Denise Brown, the State recommends [that the court sentence the defendant according to the plea agreement].

The State informed the court that the petitioner was going to plead guilty to second degree murder in exchange for "a sentence of twenty-five [years] at one hundred percent to serve at [the Department of Correction]."

The petitioner agreed that the State correctly announced the terms of the plea agreement. The petitioner said that he believed he understood what he was doing by entering a guilty plea. He acknowledged that he was represented by counsel, and he stated that he was satisfied with counsel's representation. He said that counsel had explained the charges of felony murder and reckless endangerment and the possible range of punishment for each. The trial court outlined the petitioner's rights to have a jury trial, to confront the State's witnesses, to call his own witnesses, to decide whether to testify in his own behalf, and to appeal after trial. The petitioner acknowledged that he was waiving those rights by entering his guilty plea. The petitioner also stated that he reviewed the plea petition with his attorney and that he understood the petition. He confirmed that if he had any questions when reviewing the petition, he would have asked his attorney. He acknowledged signing the plea petition and that he did so freely and voluntarily. The petitioner stated that no one forced or

threatened him to plead guilty and that no one promised him anything other than the plea agreement in exchange for the plea. Counsel stated that he believed the petitioner understood what he was doing and that the petitioner was doing so freely and voluntarily. The petitioner then entered a plea of guilty to the charge of second degree murder.

**Post-Conviction Hearing.** At the September 29, 2010 post-conviction hearing, Detective Terrance Bradley with the Metropolitan Nashville Police Department testified that he investigated the shooting of Denise Brown. His investigation revealed that the petitioner and Williamson[1] were playing dice when Williamson robbed the petitioner. The apartment in which the victim was shot was the home of a woman Williamson dated. The petitioner thought he saw Williamson enter that apartment, and he shot into the apartment attempting to shoot Williamson. When Detective Bradley interviewed Williamson, Williamson denied being present for any of these events. Detective Bradley interviewed Tessie Torez at the crime scene, and he was unsure whether she said that she saw the petitioner shooting at the house or that she saw him shooting in the area of the house. No other witnesses acknowledged seeing the petitioner shoot at anyone.

On cross-examination by the State, Detective Bradley testified that the petitioner confessed to killing the victim. The petitioner said that he was trying to shoot someone else when he accidentally shot the victim.

Patrick Wells testified that he was a private investigator hired to work on the petitioner's case. At trial counsel's request, Mr. Wells interviewed witnesses to the shooting. A letter from Mr. Wells to trial counsel summarizing the interview with Ms. Torez was admitted as an exhibit to the post-conviction hearing. Ms. Torez told Mr. Wells that the petitioner was shooting at the building and not at an individual. She also informed Mr. Wells that others had told her the petitioner was shooting at Williamson. Mr. Wells could not recall any witnesses who said they saw the petitioner shooting at a particular person. Mr. Wells also could not recall whether the petitioner ever told him that his police statement was untruthful.

The petitioner testified that he was eighteen years old when he committed this offense. He said that he met with counsel several times while the charges were pending. Counsel reviewed the indictments and explained to the petitioner the definitions of the offenses. The petitioner testified that counsel explained felony murder as the "commission of a felony, where a murder occurred, somewhere in that words." According to the petitioner, counsel told him that reckless endangerment was a possible underlying felony on which to base the charge of felony murder and "that if [the petitioner] was found guilty of reckless

---

[1]This person is called by several names in the record, including "Williamson," "Williams," "Juan," and "Dejuan."

endangerment, it would make [him] guilty of felony murder automatically because it was a felony." The petitioner said that he pleaded guilty based on this understanding of felony murder and that he would have gone to trial if he had known that reckless endangerment was not an underlying offense for felony murder. Based on counsel's advice, the petitioner "didn't believe [he] had a chance" at trial. He acknowledged that counsel reviewed the plea agreement with him in detail and that he initialed every provision of the agreement. Although the petitioner initialed the provisions stating that he understood the elements of the charged offenses and that counsel explained all his possible defenses, that was not, in fact, true.

The petitioner testified that he informed trial counsel that he lied in his police statement when he said that he was trying to shoot Williamson. The petitioner told counsel the truth:

> I told [counsel] that the guy robbed me. He made me move. He made me get away from where we was at. I went home, and I got the guns and the vest, and I came back.

> And when I came back, nobody was right there. I told him I was mad. And the area I grew up in, I was just honest, and I told him that where I was from, that I had to try to put on some kind of front or I would be a punk . . . for as long as I lived there. And I told [counsel] I just was shooting the guns in frustration.

The petitioner denied trying to shoot any particular person or pointing the guns at anything specific.

The petitioner testified that he and counsel did not discuss possible defenses to the charges. Trial counsel said that the best trial strategy would be for the petitioner to testify, consistently with what he told counsel and contrary to the police statement, that he was not trying to shoot anyone.

On cross-examination, the petitioner testified that the primary issue at trial would be which of the petitioner's versions of the events to believe. The petitioner conceded that he faced the possibility of life imprisonment if found guilty at trial and that such a sentence was at least twice as long as the twenty-five year sentence he received for pleading guilty. Nevertheless, based on his new understanding of felony murder, the petitioner believed that he would be found not guilty of that offense at trial. The petitioner acknowledged lying to the trial court at the plea hearing when he said he understood the offenses with which he was charged and the consequences of his guilty plea.

Trial counsel testified that he had been licensed to practice law in Tennessee since 1999 and that ninety percent of his practice consisted of criminal defense. He was appointed to represent the petitioner in this case, and he met with the petitioner "numerous time[s]." They discussed the offense of felony murder, "what the State would have to prove, . . . and what his defenses could potentially be in the case." When asked whether counsel told the petitioner that reckless endangerment was an underlying offense for felony murder, counsel responded:

> Well, I am not sure that was the trigger for it. It was the underlying attempted murder of the other gentleman of the agg robbery. There were a couple of theories of why he went back over there, but his problem was that there were witnesses who said there had been a confrontation with this other adult and that that's the reason he had returned.

> In our investigation, we discovered, we believed, that the man was inside the house when the shooting happened, that he went back to seek this revenge, or at least – and he did tell me the story about he more or less wanted to put on a front and go over there. And he was afraid if he didn't retaliate, that he would forever be, in his words, some sort of punk over there, and so he had to go do something about it.

> We had issues that had nothing to do with just the reckless endangerment.

Counsel testified that "[t]he case came down to his intent, why was he there and what was he doing." He reviewed with the petitioner the circumstantial evidence of intent, that the petitioner was angry, retrieved two guns and a bulletproof vest, returned to the house, and fired the guns. Counsel and the petitioner discussed the possibility of the petitioner testifying at trial to contradict his police statement, and counsel informed the petitioner that his lying to the police would be harmful to his credibility in front of a jury.

Regarding the petitioner's plea, counsel testified that he believed the petitioner understood his rights and what he was doing by pleading guilty. A transcript of the plea submission hearing was admitted as an exhibit to the post-conviction hearing.

On cross-examination by the petitioner, trial counsel testified that he discussed "the entire case with [the petitioner]," including what trial would probably be like. The petitioner's defense against felony murder would have been that the petitioner did not intend to shoot anyone but rather that he intended to make a display after the other man robbed him. Counsel informed the petitioner that he would have to testify at trial in order to pursue that defense. Trial counsel acknowledged that he was unaware of any witnesses that told the

police the petitioner was trying to shoot a specific person. According to counsel, all the witnesses and the petitioner told the police that the petitioner was shooting at the house. Trial counsel advised the petitioner that pleading guilty under the terms of the plea agreement was a "smarter choice than going to trial," but counsel also told the petitioner that he had the option of going to trial.

Trial counsel could not recall informing the petitioner that reckless endangerment was a possible underlying offense for felony murder, and when asked whether it was possible that he did so inform the petitioner, counsel responded, "I don't think so."

Following the evidentiary hearing, the post-conviction court entered a written order denying relief. In the order, the court stated:

> A close review of the record and testimony presented, [sic] reveals that the trial counsel testified that . . . he met with the defendant and informed him of the nature of the charges against him, the likelihood of conviction and range of punishment as well as the nature and consequences of the plea agreement to the petitioner . . . .
>
> Therefore, Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel and that the plea was a violation of due process rights in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The Court does not find the petitioner's testimony to be credible. Accordingly, the Court finds that Petitioner has failed to show that he was prejudice [sic] by counsel's allegedly deficient conduct. . . .

## ANALYSIS

On appeal, the petitioner argues that he received the ineffective assistance of counsel because trial counsel erroneously advised him that felony murder could be based on the offense of reckless endangerment. As a result of this alleged ineffectiveness, he contends that his guilty plea was not knowingly and voluntarily entered. The State responds that the post-conviction court correctly denied relief because the petitioner failed to demonstrate his claims by clear and convincing evidence. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of

reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntarily and intelligently made. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Here, the record supports the post-conviction court's ruling that the petitioner failed to prove he received the ineffective assistance of counsel in connection with the guilty plea. Trial counsel testified that, before the guilty plea, he reviewed with the petitioner the

elements of the charged offenses, including felony murder. He could not recall telling the petitioner that felony murder could be based on the offense of reckless endangerment, and he doubted that he did so.[2] Counsel's testimony regarding possible defense strategies to negate any proof that the petitioner intended to kill the robber further demonstrates that counsel competently advised the petitioner regarding the charges he faced. Additionally, the petitioner acknowledged at the plea submission hearing that he understood the elements of felony murder. Although the petitioner testified at the post-conviction hearing that counsel told him reckless endangerment was a basis for felony murder and that he would have taken the case to trial had he known otherwise, the post-conviction court specifically found the petitioner's testimony to be incredible. We conclude, therefore, that the petitioner has not produced clear and convincing evidence that counsel erroneously informed him regarding reckless endangerment as a basis for felony murder. Consequently, the petitioner has failed to prove either deficient performance or prejudice. Because his challenge to the guilty plea is premised on the alleged ineffective assistance of counsel, the failure to prove that counsel was ineffective also results in the failure to prove his guilty plea was not knowing and voluntary. The petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.


_____
CAMILLE R. McMULLEN, JUDGE

---

[2]Felony murder, at the time of the petitioner's offense, was the "killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. § 39-13-202(a) (2003).